QUEENS COUNTY BUSINESS ALLIANCE, INC., et al., Appellants, v NEW YORK STATE RACING ASSOCIATION, INC., et al., Respondents.

Second Department, October 4, 1982

### APPEARANCES OF COUNSEL

*Lubash & Gardner* (*Howard J. Gardner* of counsel), for appellants.

*Robert Abrams, Attorney-General* (*Barbara B. Butler* and *George D. Zuckerman* of counsel), respondent *pro se,* and for New York State Racing and Wagering Board and another, respondents.

*Cahill Gordon & Reindel* (*Thomas F. Curnin, Joseph I. Loonan* and *Richard A. Levine* of counsel), for New York State Racing Association, Inc., respondent.

*Frederick A. O. Schwarz, Corporation Counsel (Carolyn E. Demarest* and *Fay Leoussis* of counsel), for City of New York, *amicus curiae.*

OPINION OF THE COURT

THOMPSON, J.

During the last few years, we have seen a rapid increase in the number of flea markets in city parks, in empty warehouses and at roadsides. The instant proceeding challenges the legality of the operation of flea markets at the Aqueduct and Belmont Park Race Tracks by Barterama, Inc. (Barterama), a lessee of the New York State Racing Association, Inc. (NYRA), which operates the tracks. NYRA is a nonprofit corporation organized under section 1 of chapter 812 of the Laws of 1955 as amended (amdg L 1926, ch 440).

Petitioner Queens County Business Alliance, Inc. (the Alliance), which is a domestic corporation, is an umbrella corporation which seeks to promote the interests of retail merchants in Queens County. Petitioners Julian Wager and Cynthia Blank are retail merchants engaged in business in Queens County, officers of the Alliance and residents of Queens. They brought the instant proceeding, pursuant to CPLR article 78, contending that the operation of the flea markets at the tracks violates the New York City Zoning Resolution and constitutes a public and private nuisance. They allege that on September 2, 1980, the New York City Department of Buildings served NYRA with a notice that operating flea markets on Aqueduct track's open parking lot was an illegal use and directed it to discontinue the use forthwith. NYRA did not comply. The petitioners also contend that NYRA has acted *ultra vires* in entering into an agreement with Barterama to permit the flea markets. They assert that the office of Secretary of State has jurisdiction to take corrective action, including revocation of NYRA's charter, but that the Secretary has refused to do so, and that the Attorney-General could take corrective action, including prosecution of NYRA for violating its charter and applicable laws, but that the Attorney-General has refused to do so. They also claim that NYRA is subject to regulation by the New York State Racing and Wagering Board (the Racing Board), and

that that entity failed to perform its duty when it failed to take corrective action. Petitioners allege that the flea markets sell inferior, damaged or stolen merchandise "which has resulted in unfair competition to reputable merchants." Petitioners also claim that flea market operations cause traffic congestion, directly harming them.

The petitioners sought relief in the nature of mandamus directing the Racing Board, the Attorney-General and the Secretary of State, *inter alia,* to take "corrective action", including cancellation of NYRA's corporate charter and cancellation of any agreements NYRA had to permit flea markets or similar operations at the tracks' parking lots. Special Term dismissed the petition pursuant to CPLR 7804 (subd [f]).

■ Petitioners have failed to assert a clear legal right to relief in the nature of mandamus. NYRA's certificate of incorporation authorizes it to "lease * * * and otherwise deal with * * * and otherwise dispose of lands"; so it cannot be said that it acted *ultra vires* in entering into agreements with Barterama (see *City, Trust, Safe Deposit & Sur. Co. of Phila. v Wilson Mfg. Co.,* 58 App Div 271, 273).

Also, in this instance, a decision by the Racing Board, the Attorney-General or the Secretary of State to take "corrective action" would be a discretionary determination, not a ministerial act (see *People v Bunge Corp.,* 25 NY2d 91, 97; *People v Ballard,* 134 NY 269, 293). Therefore, the petition, insofar as it demanded relief in the nature of mandamus directing those respondents to take "corrective action", was properly dismissed.

Barterama and NYRA are both private corporations. Relief in the nature of mandamus, to direct performance of a duty enjoined by law, may lie against a private corporation (see 23 Carmody-Wait 2d, NY Prac, § 145:189). However, in the instant case, petitioners do not seek performance of a duty enjoined by law, but injunctive relief against Barterama and NYRA. The proper procedure for obtaining such relief is to bring a private action to enjoin alleged violations of the New York City Zoning Resolution or to enjoin a public or private nuisance. Therefore, as it

now stands, this proceeding should be treated as a private action for injunctive relief against Barterama and NYRA (see *Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 449, 458).

■ NYRA contends that it is exempt from the local zoning resolution because it is performing a governmental function and because State regulation by the Racing Board has pre-empted local control. These contentions are without merit (see *People v New York Racing Assn.,* NYLJ, Aug. 20, 1982, p 7, col 4). The operation of flea markets on racetrack parking lots is peripheral to the operation of the racetracks themselves and is clearly not a governmental function (see *People v Witherspoon,* 52 Misc 2d 320). Further, although the State regulates horse racing and pari-mutuel betting, NYRA has pointed to no State regulations dealing with flea markets conducted on racetrack premises. Since the operation of flea markets is not related to horse racing, it cannot be said that the State has pre-empted regulation of that use (see *People v Winner's Circle Flea Market,* 102 Misc 2d 355). Therefore, the operation of flea markets on racetrack property is subject to the New York City Zoning Resolution. Petitioners' allegations that NYRA and Barterama have violated applicable zoning regulations, state a cause of action and the matter should therefore be remitted to Special Term for further proceedings.

In light of our disposition, two further matters merit comment. We first note that although a prior application by the City of New York to intervene in this proceeding was denied by Special Term after it had granted the application to dismiss the petition, our conversion of the proceeding into an action for injunctive relief makes a renewed application to intervene appropriate if the city is desirous of entering the action. We also note that although respondents have made several oblique references to the question of petitioners' standing, the question of standing has not been considered at this stage in the proceedings because the issue has not been formally raised or properly developed. Our determination is without prejudice to respondents, upon joining issue, pleading whatever matter

.they deem appropriate to protect their interests, including raising the question of standing.

WEINSTEIN, J. P., BRACKEN and BOYERS, JJ., concur.

Judgment of the Supreme Court, Queens County, dated August 7, 1981, modified, on the law, by adding thereto after "CPLR", the following: "except that the motions to dismiss made by the New York Racing Association, Inc. and Barterama, Inc. are denied." As so modified, judgment affirmed, without costs or disbursements, and as between petitioners and respondents New York Racing Association and Barterama, Inc., the claims are severed and the proceeding is converted into an action for injunctive relief. The petition is deemed the complaint. The time for the Association and Barterama, Inc. to serve their answers is extended until 20 days after service upon them of a copy of the order to be made hereon, with notice of entry. The matter is remitted to Special Term for further proceedings in accord with the opinion of THOMPSON, J.