*586
 
 Zahra, J.
 

 Defendant was charged with four counts of child sexually abusive activity pursuant to MCL 750.145c(2); MSA 28.342a(2) arising from the photographing and videotaping of four young girls. After defendant was bound over for trial, on the charges, he filed a motion to quash the information in the circuit court. The circuit court granted the motion, finding no evidence to establish that at the time of the photographing and videotaping the girls were engaged in “child sexually abusive activity” as defined by the statute. MCL 750.145c(l)(h); MSA 28.342a(l)(h). The prosecutor now appeals as of right the dismissal of two of the four counts.
 
 [1]
 
 We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.
 

 Defendant videotaped and photographed several children, always with the consent of the children’s parents. This appeal concerns two videotapes that for the most part depict several hours of innocuous behavior. Portions of the tapes depict play between and among children. Other portions of the tapes depict a more formal taping session with the children posing at defendant’s direction. Often, these sessions featured the children wearing adult cosmetics and were conducted with a parent present and observable on the videotape. The prosecutor claims as offensive and violative of law approximately six minutes of activity depicted on these two tapes.
 

 
 *587
 
 One tape, identified as people’s exhibit 3, depicts two young girls, twins aged ten, playing while defendant is allegedly videotaping their play. The camera is focused exclusively on the girls’ crotch areas; their faces cannot be seen. At one point, one of the children exposes her vaginal area. Defendant is alleged to have edited the tape to focus on, slow down, and replay this scene. The image of the girl’s genital area was depicted on the screen for over two minutes. Defendant is alleged to have made copies of his edited version of the original tape.
 

 The second tape, identified as people’s exhibit 2, depicts two sisters aged eight and ten watching themselves on a television monitor. One child lifts her shirt. This child asks the other child whether she wants to “see what is under here” referring to her underpants. The child then exposes her vaginal area and laughs. The child’s full body is observed on the tape. Nothing suggests the child acted at defendant’s request. No editing of this scene occurred except that it was replayed twice more on the tape at regular speed.
 

 I. STANDARD OF REVIEW
 

 We review the district court’s decision to bind over a defendant, as well as the trial court’s decision regarding a motion to quash an information, to determine whether the district court abused its discretion.
 
 People v Hamblin,
 
 224 Mich App 87, 91; 568 NW2d 339 (1997). However, the decision whether alleged conduct falls within the statutory scope of a criminal law involves a question of law that we review de novo.
 
 Id.
 
 Similarly, statutory interpretation is a question of law reviewed de novo on appeal.
 
 People v Wil
 
 
 *588
 

 liams,
 
 226 Mich App 568, 570; 576 NW2d 390 (1997). Because the gravamen of this appeal is a question of statutory interpretation, whether the act of editing a videotape of otherwise nonoffensive child nudity can give rise to the creation of “child sexually abusive activity” as that term is defined by MCL 750.145c(2); MSA 28.342a(2), our review is de novo.
 

 H. ANALYSIS
 

 The prosecution argues that defendant’s editing of the tape constituted a violation of the statute because by so editing, defendant turned apparently innocent child play into images depicting erotic nudity. By contrast, defendant contends that because the children were not engaged in sexual activity at the time the original videotape was made, but instead ordinary nudity, defendant’s conduct did not violate the statute.
 

 The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature.
 
 People v Humphreys,
 
 221 Mich App 443, 451; 561 NW2d 868 (1997). To ascertain that intent, this Court must first turn to the language contained within the challenged statutory provision.
 
 People v Pitts,
 
 216 Mich App 229, 232; 548 NW2d 688 (1996). The Legislature is presumed to have intended the meaning it plainly expressed.
 
 People v Roseburgh,
 
 215 Mich App 237, 239; 545 NW2d 14 (1996). If the language is clear and unambiguous, statutory construction by this Court is precluded.
 
 People v Armstrong,
 
 212 Mich App 121, 123; 536 NW2d 789 (1995). Adhering to these principles, we conclude that the plain language of the statute encompasses, in part, the conduct that defendant is alleged to have committed.
 

 
 *589
 
 The statute at issue provides:
 

 A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or
 
 a person who attempts or prepares
 
 or conspires to arrange for, produce,
 
 make,
 
 or finance
 
 any child sescually abusive activity or child sexually abusive material is guilty of a felony
 
 .... [MCL 750.145c(2); MSA 28.342a(2) (emphasis added).]
 

 Thus, under MCL 750.145c(2); MSA 28.342a(2), a person is guilty of child sexually abusive activity if, among other things, the person prepares or makes “child sexually abusive material.”
 
 [2]
 

 People v Smith,
 
 205 Mich App 69, 71; 517 NW2d 255 (1994).
 

 
 *590
 
 Child sexually abusive material means
 

 a developed or undeveloped photograph, film, slide,
 
 electronic visual image,
 
 computer diskette, or sound recording
 
 of a child, engaging in a listed sexual act
 
 .... [MCL 750.145c(l)(i); MSA 28.342a(l)(i) (emphasis added).]
 

 “Erotic nudity,” is identified as one of several “listed sexual act[s.].” MCL 750.145c(l)(e); MSA 28.342a(l)(e). Erotic nudity is defined as “the lascivious exhibition of the genital, pubic, or rectal area of any person.” MCL 750.145c(l)(d); MSA 28.342a(l)(d). The statute further defines “lascivious” to mean “wanton, lewd, and lustful and tending to produce voluptuous or lewd emotions.”
 
 Id.
 
 “Electronic visual image” is not defined in the statute; however, under these circumstances reference to dictionary definitions is appropriate in construing the language.
 
 People v Seeburger,
 
 225 Mich App 385, 392; 571 NW2d 724 (1997). We note that the definition of image includes a “physical likeness or representation of a person, animal, or thing, photographed, painted, sculptured, or otherwise made visible.”
 
 Random House Webster’s College Dictionary
 
 (1997).
 

 On the basis of our reading of the plain language of the statute, we conclude that the use of an otherwise benign image of a child exhibiting ordinary nudity to create what could fall within the definition of erotic nudity, is conduct proscribed by the statute. Contrary to defendant’s position, the statute does not require that the children actually be engaging in sexual activity at the time the activity is memorialized on tape.
 
 *591
 
 Rather, the statute prohibits the making of a visual image that is a likeness or representation of a child engaging in one of the listed sexual acts.
 

 Our interpretation of the plain language of the statute is consistent with the intent of the Legislature. In
 
 People v Ward,
 
 206 Mich App 38, 42-43; 520 NW2d 363 (1994), this Court noted that the act prohibiting child sexually abusive activity “focuses on protecting children from sexual exploitation, assaultive or otherwise” and that the purpose “of the statute is to combat the use of children in pornographic movies and photographs, and to prohibit the production and distribution of child pornography.” Misappropriating the innocent image of a child for purposes of creating the appearance of a child engaging in a listed sexual act while different in kind from the damage that arises from actually subjecting a child to the actual act is nonetheless exploitative and, arguably, equally as damaging. A child whose innocuous image has been altered to create sexually explicit pictures has its innocence violated. Moreover, ordinary nudity that has been enhanced to depict something lewd and preserved on tape has the potential of being a source of great humiliation, embarrassment, and mental and emotional distress to the child who may be unable to appreciate her innocent role in the creation and only able to focus on the end product.
 

 The dangers of child pornography are not limited to its effect on the children actually used in its creation. Congress has found that virtual pornography created without the involvement of real minors is increasingly used by pedophiles and child molesters to seduce or entice children into participating in sexual activity by breaking down their natural inhibitions.
 
 United States
 
 
 *592
 

 v
 
 Hilton, 167 F3d 61, 67 (CA 1, 1999). Moreover, manipulations of innocent pictures of real children to show sexual conduct can be used to blackmail that child to submit to abuse and remain silent.
 
 Id.
 
 Under either situation, it is irrelevant whether the child depicted in the videotape is actually performing sexually explicit activities as long as the video depiction gives the appearance that such activities are being conducted. In this context, young children are incapable of discerning reality from fiction. Thus, interpreting the statute to preclude the misappropriation of a child’s image for the purposes of creating child sexually abusive material is consistent with the legislative goal of protecting all children, not just those appearing in the sexually abusive material, from sexual exploitation.
 

 Applying the plain language of the statute to the facts of this case, we find that the district court did not abuse its discretion in binding defendant over on the charges that relate to the creation of the images depicted on the tape identified as people’s exhibit 3. There was sufficient evidence on which to conclude that defendant focused a video camera on the crotch area of a child and videotaped that child’s otherwise innocent behavior of exposing her genital area. The evidence supported the conclusion that defendant edited the tape to slow down and stop the taped images to display a closeup scene of the child’s nude genital area, keeping the scene displayed on the edited tape for over two minutes and then repeating the scene twice more in slow motion. Such conduct, if proved, would constitute the making of images depicting erotic nudity of a child, in violation of MCL 750.145c(2); MSA 28.342a(2).
 

 
 *593
 
 In contrast, we find that the district court abused its discretion in binding defendant over on charges that relate to the creation of the images depicted on the tape identified as people’s exhibit 2. No images on that tape constitute child sexually abusive material. This tape merely shows innocent child nudity. While defendant allegedly edited the tape to display the nudity three times, the replay is at normal speed and the camera was not focused exclusively on the child’s genital area.
 
 [3]
 
 Such child nudity does not constitute the display of “erotic nudity,” as that term is statuto-. rily defined. We therefore conclude that charges arising from the scenes depicted on the tape identified as people’s exhibit 2 were properly dismissed.
 

 Finally, we address defendant’s argument that an interpretation of the statute that prohibits the editing of videotapes to create depictions of a child that may be considered offensive to some violates the First Amendment, US Const, Am I. Defendant reasons that because the edited tapes still simply depict a child in the state of ordinary nudity, his conduct is fully protected under the First Amendment. At the onset, we note that defendant’s focus is on a tape that in its original form depicted ordinary nudity, while it should be on the end product of the editing process. To simply ignore this observation flies in the face of reason because it is the harm associated with the viewing of this end product that the statute, in part, is designed to address.
 

 In any event, defendant recognizes that while ordinary nudity is protected by the First Amendment,
 
 *594
 
 child pornography is not.
 
 New York v Ferber,
 
 458 US 747, 765, n 18; 102 S Ct 3348; 73 L Ed 2d 1113 (1982). Thus, if the statute’s definition of child sexually abusive material is narrowly drawn so that protected forms of free speech are not punished, the statute passes constitutional muster.
 
 People v Gezelman (On Rehearing),
 
 202 Mich App 172, 174; 507 NW2d 744 (1993).
 

 Before 1994, the definition of child sexually abusive material exempted material that had primary literary, artistic, educational, political, or scientific value or that the average person applying contemporary community standards would find does not appeal to prurient interests 1977 PA 301. This language paralleled the obscenity test formulated by the United States Supreme Court in
 
 Miller v California,
 
 413 US 15, 24; 93 S Ct 2607; 37 L Ed 2d 419 (1973). In
 
 Gezelman,
 
 this Court considered and rejected a First Amendment challenge to this language found in the predecessor to MCL 750.145c(2); MSA 28.342a(2). This Court stated:
 

 Specifically, [the defendant] asserts that the statute’s prohibition against “erotic nudity” involving children is over-broad because it could encompass protected forms of free speech, such as the innocent photograph of a nude child by its parents. We disagree. The statutory definition of erotic nudity does not encompass the depiction of all child nudity. Rather, it is narrowly defined to exclude those depictions that have a “primary literary, artistic, educational, political, or scientific value” and that do not appeal to the prurient interests in sex. MCL 750.145c(l)(d); MSA 28.342a(l)(d). Because the definition is narrowly drawn so that protected forms of free speech are not punished, the statute is not unconstitutionally overbroad.
 
 [Gezelman, supra at
 
 174.]
 

 In 1994, however, the statute was amended to eliminate this exemption and to redefine “erotic nudity” in
 
 *595
 
 the manner in which it currently exists. 1994 PA 444. Apparently, this was in response to two United States Supreme Court opinions:
 
 Osborne v Ohio,
 
 495 US 103; 110 S Ct 1691; 109 L Ed 2d 98 (1990), and
 
 Ferber, supra.
 
 House Legislative Analysis, HB 4177, January 12, 1995. In
 
 Ferber, supra
 
 at 756, the Court held that the states “are entitled to greater leeway in the regulation of pornographic depictions of children,” noting that a state’s interest in safeguarding the physical and psychological well-being of a minor is compelling. The Court also recognized that the “prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance,”
 
 id.
 
 at 757, and that, by contrast, the “value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not
 
 de minimis.” Id.
 
 at 762.
 

 In
 
 Osborne, supra
 
 at 113, the Supreme Court found that an Ohio statute that had been interpreted to prohibit “ ‘the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged,’ ” (citation omitted), was constitutionally permissible. The Court noted that the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children.
 
 Id.
 
 at 113-114.
 

 We, like the Court in
 
 Gezelman,
 
 conclude that the statute’s current definition of erotic nudity does not violate the First Amendment. The definition is narrowly drawn so that there is no infringement upon protected forms of free speech. Because defendant’s
 
 *596
 
 argument is simply that this Court’s interpretation of the statute prohibits ordinary nudity in violation of the First Amendment, we find it to be without merit.
 

 Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction
 

 [1]
 

 The information is poorly drafted in that each count is identical to the others and each count merely parrots the language of the statute. The prosecutor claims to appeal the dismissal of only two of the four counts originally asserted. We assume from the contents of the briefs that the prosecutor appeals the dismissal of the charges that relate to the videotaping of the children and that one count is asserted for each of the two tapes presented to the trial court.
 

 [2]
 

 It should also be noted that the statute prohibits a person from persuading, inducing, enticing, coercing, causing, or knowingly allowing a child to engage in child sexually abusive activity for the purpose of producing sexually abusive material. MCL 750.145c(2); MSA 28.342a(2). The felony information merely mirrors this language of MCL 750.145c(2); MSA 28.342a(2). In anticipation of an argument that the felony information did not adequately specify the acts for which defendant was charged, that defendant was being charged with the making of child sexually abusive material (the other component of the statute), we make the following comments. The information, coupled with the preliminary examination, as well as the statements made by the prosecutor on the record during the motion to quash, put defendant on notice of the acts for which he was being charged. In addition, defendant, in his brief on appeal, tacitly admits that he is being charged with the making of sexually abusive material when he argues:
 

 Whatever editing the defendant may have done of the tapes had nothing whatsoever to do with the children and their participation in sexual activity. The “preparation of child sexually abusive material” proscribed by MCL 750.145c(2) refers only to, and as a constitutional matter must refer only to, the preparation of material involving the participation of children in sexual activity.
 

 Considering these circumstances, defendant was aware of the evidence being offered against him and was informed of the nature of the charges. Thus, while the information may be deficient where it does not entirely
 
 *590
 
 encompass the scope of MCL 750.145c(2); MSA 28.342a(2), we find no prejudice to defendant. See, e.g.,
 
 People v Traughber,
 
 432 Mich 208, 213-217; 439 NW2d 231 (1989).
 

 [3]
 

 Our opinion should not be construed as holding that the repeated display of child nudity as a matter of law can never constitute a violation of MCL 750.145c; MSA 28.342a.